IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH

| | | |
|---|---|---|
| PREMIER PAN COMPANY, INC., A PENNSYLVANIA CORPORATION; | ) ) ) | |
| | ) | 2:19-CV-00443-CRE |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| AUDION AUTOMATION, LTD, A TEXAS CORPORATION; AND  PAC MACHINERY GROUP, A TEXAS CORPORATION; | ) ) ) ) ) | |
| | ) ) | |
| Defendants, | ) | |

**<u>MEMORANDUM OPINION</u>[1]**

Cynthia Reed Eddy, Chief United States Magistrate Judge.

 This civil action was initiated in this court on April 18, 2019, by Plaintiff Premier Pan Company against Defendants Audion Automation, LTD and PAC Machinery Group.  Plaintiff asserts causes of action against Defendants for breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, unjust enrichment, negligent misrepresentation, and detrimental reliance. *See* Compl. (ECF No. 1). Defendants have filed a counterclaim alleging unjust enrichment. *See* Amended Answer and Counterclaim (ECF No. 48). This court has subject matter jurisdiction over the controversy pursuant to 28 U.S.C. § 1332.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including trial and the entry of a final judgment.  (ECF Nos. 13-14).

Presently before the court is a motion by Plaintiff to dismiss Defendants' counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  (ECF No. 49). For the reasons that follow, Plaintiff's motion is granted, and Defendants are granted leave to file an amended counterclaim.

## I.      BACKGROUND

Plaintiff "is a bake-ware manufacturing company, specializing in high volume customized production for government contracts and commercial enterprises." Compl. (ECF No. 1) at ¶ 1. Defendants manufacture and sell shrink-wrapping machines ("Side Sealers"). Believing Defendants' Side Sealers met its packaging needs, Plaintiff ordered one Side Sealer, and picked it up from Defendants' facility in Ohio in January of 2018. *Id*. at ¶ 14.  Plaintiff paid Defendants $41,705 for that Side Sealer. *Id*. at ¶ 15.  Plaintiff also paid Defendants for training on the use and maintenance of the Side Sealer.

> Included in the Terms and Conditions of [Defendants'] sale of the [] Side Sealer to [Plaintiff] was an express warranty providing, *inter alia*:
>
>> This PAC machine is warranted to be free from defects in materials and workmanship for two (2) years (single shift operation), under proper use and maintenance, beginning from the date of shipment. PAC will furnish replacement parts free of charge except for consumable items that are subject to normal wear and tear while using the machine, which are not covered under this warranty. Replacement parts subject to warranty should be ordered and failed parts returned as outlined below.  Labor charges incurred for replacement or repair of such parts by the purchaser are not covered by this warranty. … WARRANTY IS LIMITED TO REPAIR OF THE MACHINE AND REPLACEMENT OF DEFECTIVE PARTS.

Amended Answer and Counterclaim (ECF No. 48) at ¶ 6.

"In March 2018, the shrink-wrapping machine's control panel malfunctioned and was out of commission." Compl. (ECF No. 1) at ¶ 17.  Defendants retrieved the Side Sealer, attempted to

fix it free of charge, and returned it to Plaintiff at the end of April 2018. *Id*. at ¶ 18.  "On or around May 3, 2018, day[s] after Defendants returned it to [Plaintiff], the shrink-wrapping machine failed again due to an encoder error." *Id*. at ¶ 19.  Plaintiff attempted to resolve the problem, but the machine failed again on May 7, 2018. *Id*. at ¶ 20.  Defendants replaced the faulty encoder free of charge on May 16, 2018. *Id*. at ¶ 24.

Meanwhile, Plaintiff purchased a second Side Sealer, with the same express warranty, from Defendants in August 2018 for $44,960, and the Side Sealer was installed in late September 2018. *Id*. at ¶ 25. However, the first Side Sealer again began experiencing encoder malfunctions on October 25, 2018, and Defendants again replaced the encoder free of charge. *Id*. at ¶¶ 26-27.  That encoder failed again on or around December 5, 2018, was replaced, and failed again on January 8, 2019.  Around December 18, 2018, the encoder failed on the second Side Sealer.  In total, Plaintiff "has had to replace encoders eight separate times in less than a year." *Id*. at ¶ 36.

According to Plaintiff, Defendants represented that the "defects were due to electrical abnormalities," and Plaintiff "hired Duquesne Light Company, LLC ('DLC'), to conduct power testing at its warehouse to determine the extent of the electrical issues." *Id*. at ¶ 42.  "DLC's test results showed normal electrical readings." *Id*. at ¶ 43.  It is Plaintiff's position that Plaintiff "has spent tens of thousands of dollars alone on mitigating the loss of, troubleshooting, and repairing the shrink-wrapping machines." *Id*. at ¶ 47.

Thus, on April 18, 2019, Plaintiff filed the complaint in this matter, and on July 3, 2019, Defendants filed an answer. (ECF No. 14).  Discovery ensued, and on October 27, 2020, Defendants filed a motion for leave to amend their answer and add a counterclaim. (ECF No. 39). This Court granted that motion, and on November 9, 2020, Defendants filed an amended answer and counterclaim.  Specifically, Defendants assert that Plaintiff called upon Defendants to service

the first Side Sealer on three occasions in May 2018, and Defendants performed that work pursuant to the warranty.  Subsequently, Plaintiff requested Defendants service one or both Side Sealers on seven occasions between October 2018 and January 2019. During discovery, Defendants conducted an inspection of Plaintiff's facility, where they learned "that there existed an improper neutral-to-ground bond at the electrical subpanel nearest to the [shrink wrapping machines] in violation of National Electric Code ('NEC') Article 250." Amended Answer and Counterclaim (ECF No. 48) at ¶ 16.  It is Defendants' position that this electrical system violation constitutes "improper use and/or maintenance" and "renders the repair and replacement work performed free of charge by [Defendants] outside the purview of the express warranty." *Id*. at ¶ 19.   Thus, Defendants assert a counterclaim for unjust enrichment.

On November 30, 2020, Plaintiff filed the motion to dismiss the counterclaim and brief in support thereof at issue here. (ECF Nos. 49-50).   According to Plaintiff, Pennsylvania law precludes this type of counterclaim, and even if it were permitted, Defendants have failed to set forth a *prima facie* case for unjust enrichment.  Defendants filed a response thereto, and Plaintiff filed a reply. (ECF Nos. 54, 57).  This matter is now ripe for disposition.

## II.     STANDARD OF REVIEW

"Courts evaluate a motion to dismiss a counterclaim under the same standard as a motion to dismiss a complaint." *Mr. Sandless Franchise, LLC v. Karen Cesaroni LLC*, 2020 WL 6330058, at \*2 (E.D. Pa. 2020).  The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well-settled.  Under Federal Rule of Civil Procedure 8, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Rule 12(b)(6) provides that a claim may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a [pleading] must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).  Nevertheless, the court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Great Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000), or the plaintiff's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

Although a claim does not need to allege detailed factual allegations to survive a Rule 12(b)(6) motion, a claim must provide more than labels and conclusions. *Twombly*, 550 U.S. at 555.  A "formulaic recitation of the elements of a cause of action will not do." *Id*. (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Factual allegations must be enough to raise a right to relief above the speculative level" and be "sufficient to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 555.  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. [] Where a [claim] pleads facts that are 'merely consistent with' a [party's] liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

When considering a Rule 12(b)(6) motion, the court's role is limited to determining whether a party is entitled to offer evidence in support of his claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The court does not consider whether a party will ultimately prevail. *Id.* The opposing party bears the burden of establishing that the counterclaim fails to state a claim. *Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

## III.    DISCUSSION

Plaintiff first contends that Defendants' counterclaim is precluded by Pennsylvania law because the relationship between Plaintiff and Defendants is governed by an express, written contract. Pl.'s Br. (ECF No. 50) at 5-7.  In other words, it is Plaintiff's position that the express warranty that accompanied the sale of the Side Sealers precludes Defendants' unjust enrichment claim. Defendants respond that the work performed fell outside the scope of the contract and warranty because the "Side Sealers were not defective; rather, they were used improperly." Defs.' Br. (ECF No. 54) at 3.  Thus, Defendants contend that there was no contract that governed the work they performed, and therefore, unjust enrichment is a proper cause of action.

> In Pennsylvania, a party seeking to plead unjust enrichment must allege the following elements: (1) a benefit conferred on the defendant by the plaintiff;[2] (2) appreciation of the benefit by the defendant; and (3) the defendant's acceptance and retention of the benefit under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.

*Lenhart v. Huntington Ins., Inc.*, 2016 WL 3579050, at *8 (W.D. Pa. 2016), report and recommendation adopted, 2016 WL 3522043 (W.D. Pa. 2016) (internal quotation marks omitted). Pennsylvania law is also clear that the "doctrine does not apply where a written or express contract exists." *Id.*; *see also Moore v. Angie's List, Inc.*, 118 F. Supp. 3d 802, 820 (E.D. Pa. 2015) ("[T]he

---

[2] In this case, because Defendants are asserting unjust enrichment as a counterclaim, the "plaintiff" is actually "Defendants" and the "defendant" is actually Plaintiff.

doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract, regardless of how harsh the provisions of such contracts may seem in the light of subsequent happenings."). As stated by the Pennsylvania Supreme Court,

> this bright-line rule … has deep roots in the classical liberal theory of contract. It embodies the principle that parties in contractual privity ... are not entitled to the remedies available under a judicially-imposed quasi-contract [i.e. the parties are not entitled to restitution based on unjust enrichment] because the terms of their agreement (express or implied) define their respective rights, duties, and expectations.

*E. Roofing Sys., Inc. v. Simon Prop. Grp., Inc.*, 2016 WL 1367176, at *5–6 (M.D. Pa. 2016) (quoting *Wilson Area School Dist. v. Skepton*, 895 A.2d 1250, 1254 (Pa. 2006)).

Nevertheless, under Pennsylvania law, even where an express, written contract exists, a party may recover for unjust enrichment where it performed work that was beyond the timeframe or outside the scope of the written agreement. *See Ruthrauff, Inc. v. Ravin, Inc.*, 914 A.2d 880 (Pa. Super. 2006) (holding that an award of unjust enrichment was proper where "Ruthrauff made its claim for unjust enrichment for work it performed outside any promises made in the written contractual documents").

Here, Defendants contend that the work they performed to repair the Side Sealers was beyond the scope of the express, written agreement, because Plaintiff improperly used and maintained the Side Sealers in violation of the agreement. *See* Defs.' Br. (ECF No. 54) at 2 ("Indeed, it is well-settled that a claim for unjust enrichment is viable despite the existence of a written contract where – as here – the services rendered are beyond the scope of the parties' written agreement."); *id*. at 3 (Defendants "seek[] compensation for repair services rendered beyond the written warranty's scope and not addressed in the written agreement."). It is Plaintiff's position that "Defendants' duty to repair (or not repair) the Side Sealers was a basis for the parties' bargain

7

and a direct result of the contractual relationship." Pl.'s Reply (ECF No. 57) at 2.  Furthermore, they contend that this matter is distinguishable from *Ruthrauff*, where the work that was performed and for which the party was entitled to recovery occurred after "Ruthrauff completed its contractual work." 914 A.2d at 893.

Instantly, the parties entered into an agreement whereby Defendants sold to Plaintiff two Side Sealers, which were accompanied by express warranties that provided for a period of two years where Defendants would repair the Side Sealers and replace defective parts. *See* Amended Answer and Counterclaim (ECF No. 48) at Exhibit A.  It is undisputed that well within this two-year period, Defendants responded to Plaintiff's requests for repair and maintenance of the two Side Sealers.  It is for this work that Defendants now claim an entitlement to relief in quasi-contract.  However, the undisputed facts show that the relationship between Plaintiff and Defendants was governed by the express, written agreement, and therefore it is the terms of that agreement that must apply. To the extent that Plaintiff's actions may have voided the warranty, as Defendants contend, Plaintiff would not be entitled to recover on its breach of contract claim. However, this does not place the work Defendants did outside the scope of the warranty to the extent the parties interactions were no longer governed by the contract.  Accordingly, this Court grants Plaintiff's motion to dismiss Defendants' counterclaim for unjust enrichment.[3]

As set forth in Federal Rule of Civil Procedure 15(a), leave to amend generally must be granted unless the amendment would not cure the deficiency. Accordingly, the counterclaim is dismissed without prejudice, and Defendants are permitted to file an amended counterclaim within 20 days of the date of this opinion.

---

[3] Plaintiff also contends that Defendants have failed to set forth a *prima facie* case for unjust enrichment. *See* Pl.'s Br. (ECF No. 50) at 7.  Because this Court has concluded that Defendants are not entitled to relief as a matter of law, this Court will not reach that argument.

## IV.     CONCLUSION

Based on the foregoing, Plaintiff's motion to dismiss Defendants' counterclaim is granted, and Defendants are granted leave to file an amended counterclaim. An appropriate Order follows.

Dated: January 15, 2021                    .                    BY THE COURT:

                                                                s/ Cynthia Reed Eddy

                                                                Chief United States Magistrate Judge

cc:     Counsel of record
        *via electronic filing*